**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 17, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

WILLIAM FRENCH ANDERSON;
KATHRYN D. ANDERSON,

    Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

No. 23-9002
(CIR No. 23789-16)
(U.S. Tax Court)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Petitioners William French Anderson and Kathryn D. Anderson appeal a

decision of the United States Tax Court.  Exercising jurisdiction pursuant to

26 U.S.C. § 7482(a)(1), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I. Background

Dr. William French Anderson is a pediatric geneticist who worked at the University of Southern California (USC) in the medical school. He holds gene therapy patents including patents related to the use of molecule interleukin-12 (IL-12). Dr. Anderson tried to develop IL-12 and bring it to market as a cancer treatment. While at USC, Dr. Anderson had a research assistant who contributed to the research on IL-12 and was named a co-inventor on the patent.

In 2004, Dr. Anderson was arrested on allegations of sexually abusing the minor daughter of his research assistant. In 2006, he was convicted in California state court of three counts of lewd acts on a minor and one count of continuous sexual abuse of a child under the age of 14 and was sentenced to fourteen years in prison. He appealed, and the California Court of Appeals affirmed his convictions and sentence. The California Supreme Court then denied his petition for review. In 2011, he filed a state habeas corpus petition that was denied, and in 2014, he filed a federal habeas corpus petition that was also denied.

The Internal Revenue Service determined deficiencies in Petitioners' federal income taxes after disallowing deductions for legal fees of $292,175 on their 2013 tax return and $68,120 on their 2014 return. Petitioners petitioned the Tax Court for a redetermination of the tax deficiencies asserted against them, arguing the legal fees were deductible as business expenses.

The Tax Court held a trial on the petition, and then ordered the parties to file seriatim post-trial briefs. In their opening brief, Petitioners argued that the 2013 and

2

2014 legal fees were deductible as business expenses because the origin of the claim for which the legals fees were incurred (the criminal charges against Dr. Anderson) arose from Dr. Anderson's gene therapy business and his discovery and development of IL-12.  Petitioners asserted that Dr. Anderson's former colleague caused false accusations of molestation to be filed against him as the vehicle to steal his intellectual property.

In its Memorandum Findings of Fact and Opinion, the Tax Court noted it had granted the government's motion in limine to preclude any evidence or arguments that Dr. Anderson was framed on false charges but, in contravention of that order, Petitioners continued to make that argument in their opening brief.  The court reiterated that Dr. Anderson was convicted after a jury trial of the criminal charges brought against him and that his conviction was upheld on appeal.  The court therefore stated it would not address the argument further.

The court explained that "[26 U.S.C. §] 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  Aplt. App., vol. I at 121.  But "[t]he taxpayer must show that a reported business expense was incurred primarily for business rather than personal reasons and that there was a proximate relationship between the expense and the business."  *Id.* at 122.  The court further explained it must look to the origin and character of the claim for which the legal fees were incurred because "[i]f the claim arose in connection with the taxpayer's profit-seeking activities, the fees are deductible."  *Id.* (internal quotation marks omitted).

3

The Tax Court concluded that the legal fees arose out of Dr. Anderson's personal activities because they related to the criminal charges against him for sexual abuse of a minor. The court explained the criminal acts were alleged to have occurred at Dr. Anderson's home where he tutored the minor and provided her with martial arts training, he did not receive payment for these activities, and he was not in the business of providing either service. The court further explained "[t]he charges did not involve Dr. Anderson's gene therapy business or any other trade or business activity engaged in for the production or collection of income." *Id.* at 123.

The court next addressed Petitioners' "narrow[er]," *id.*, argument in their post-trial reply brief that the 2013 and 2014 legal fees were "investigatory attorney fees" that were incurred to investigate the conduct of Dr. Anderson's former colleague for "corporate sabotage" and "intellectual property theft." *Id.*, vol. XVII at 4253. The court "recognize[d] that, when appropriate, litigation costs must be apportioned between business and personal claims," and it "agree[d] that investigating and combatting potential security threats, such as sabotage and intellectual property theft, are ordinary and necessary business expenses." *Id.*, vol. I at 124 (internal quotation marks omitted). The court explained that "[a]lthough the criminal charges against Dr. Anderson generally relate to his personal conduct and relationship with the minor, petitioners' investigation into and analysis of the alleged malfeasance by the former colleague directly pertain to Dr. Anderson's gene therapy business, and legal fees expended specifically to those ends are deductible business

expenses." *Id.* But the court determined that "Petitioners' framing of the facts. . . is inconsistent with the evidence." *Id.*

Petitioners asserted that the legal fees they paid to Attorney Douglas Otto[1] in 2013 and 2014 were entirely for investigatory purposes and that Mr. Otto employed Daniel Haste to investigate the corporate sabotage and intellectual property theft. The Tax Court explained, however, that "[i]n 2013 petitioners paid $292,175 to Mr. Otto" and "Mr. Otto's records reflect that a portion of these funds was paid to various attorneys, audio experts, and investigators, but Mr. Haste was not among those payees." *Id.* The court further explained that "[n]o invoices or other documentation for 2013 reference Mr. Haste or his investigation, and there is no evidence that any of the 2013 legal expenses went toward researching, investigating, or analyzing the corporate sabotage or espionage allegations." *Id.* at 125. Instead, the descriptions of work "primarily focus[] on Dr. Anderson's ineffective assistance of counsel argument, analysis of the audio recording used against [him] during his criminal trial, and attempts to contact [his] now-adult accuser." *Id.* at 124-25. The court therefore found that the legal fees "all expressly pertain to the state habeas appeal, [in] which Dr. Anderson raised claims of ineffective assistance of counsel,

---

[1] It is undisputed that Mr. Otto represented Dr. Anderson in his state habeas case. After the state court denied habeas relief in June 2013, Dr. Anderson petitioned for rehearing, and the court granted it. Although the court vacated its earlier opinion and issued a new opinion in September 2013, the result was the same. Dr. Anderson then petitioned for review in the California Supreme Court, but that court denied review in December 2013.

challenged the integrity of [an audio] recording [used against him], and alleged other misconduct by government officials." *Id.* at 125.

In 2014 Petitioners paid $68,120 to Mr. Otto, with $60,000 going to Mr. Otto and the remainder going to others, including $3,000 to Mr. Haste. But the court determined "Petitioners did not introduce invoices or other documentation describing the work Mr. Otto performed or whether any portion of it relates to Dr. Anderson's business." *Id.* The court concluded, however, that the $3,000 paid to Mr. Haste, as well as two additional payments to Mr. Haste of $5,000 each that were not included in the original deduction amount, related to Dr. Anderson's gene therapy business.

The Tax Court sustained the disallowance of Petitioners' deduction of legal fees for their 2013 tax return. For their 2014 tax return, the court sustained $65,120 out of the $68,120 disallowance, subtracting the $3,000 paid to Mr. Haste, and it separately allowed an additional $10,000 business deduction for legal fees for additional payments to Mr. Haste.

Petitioners now seek review of the Tax Court's decision.[2]

II.  Discussion

"We review decisions of the Tax Court in the same manner as civil actions tried without a jury. That is, we review legal conclusions de novo and factual

---

[2] The parties stipulated to review in the Tenth Circuit. *See* 26 U.S.C. § 7482(b)(2) ("Notwithstanding the provisions of [§ 7482(b)(1)], [Tax Court] decisions may be reviewed by any United States Court of Appeals which may be designated by the Secretary and the taxpayer by stipulation in writing.").

determinations only for clear error.  And we review the evidence in the light most favorable to the Tax Court's ruling." *Rsrv. Mech. Corp. v. Comm'r of Internal Revenue*, 34 F.4th 881, 910 (10th Cir. 2022) (internal quotation marks, citations, and parentheticals omitted).

Petitioners argue the Tax Court erred as a matter of law in applying § 162(a), the Supreme Court's decision in *Commissioner v. Tellier*, 383 U.S. 687 (1966), and the origin-of-the-claim doctrine.  They contend Petitioners' 2013 and 2014 legal fees "were spent to investigate and reveal suspected security breaches and [intellectual property] theft" and are therefore "deductible business expenses" under "§ 162(a), and [*Tellier*]."  Aplt. Opening Br. at 28.

We are not persuaded by Petitioners' arguments.  First, Petitioners have not shown the Tax Court misapplied *Tellier.*  In that case, the petitioner was in the securities business, and he was found guilty of securities fraud.  *See Tellier*, 383 U.S. at 688.  He sought to deduct his legal fees as a business expense, *see id.*, but the Commissioner disallowed the deduction "on the ground of public policy," *id.* at 690.  In *Tellier*, there was no dispute the legal fees were business expenses within the meaning of § 162(a)—the Commissioner "concede[d]" they were.  *Id.* at 689.  Rather, the question was whether there should be a public policy exception to the plain language of § 162(a), which the Supreme Court answered in the negative.  *See id.* at 690-91.

Although Petitioners frequently cite *Tellier* to support their argument that Dr. Anderson's 2013 and 2014 legal fees are deductible as business expenses, they

fail to adequately explain how the Tax Court misapplied that case, which did not involve a dispute over whether the legal fees were business expenses as is the case here. The Tax Court here acknowledged the *Tellier* holding, recognizing "Petitioners are correct that public policy does not prohibit the deduction of legal fees relating to criminal activity so long as the legal fees are an ordinary and necessary expense of a trade or business." Aplt. App., vol. I at 123. The court then went on to explain why the legal fees Petitioners incurred were related to personal activities arising out of the criminal charges against him for sexually molesting a minor and not to any business activities. We see no error in the Tax Court's application of *Tellier*.

While Petitioners focus much of their appellate briefing on the Tax Court's alleged legal errors, they fail to adequately address the Tax Court's factual findings. The Tax Court found there was no evidence that the 2013 legal fees were incurred to investigate Dr. Anderson's former colleague's potential sabotage and intellectual property theft. Likewise, with the exception of $3,000 (and an additional $10,000 not originally claimed as a deduction), the Tax Court found there was no evidence that the remaining $65,000 in 2014 legal fees were incurred for such investigative purposes. In their appellate briefing, Petitioners do not show the Tax Court erred in making these factual findings—they point to no evidence the Tax Court overlooked or misinterpreted. Instead, they simply make conclusory assertions that the fees paid to Mr. Otto in 2013 and 2014 were for business expenses without any record support. *See*, *e.g.*, Aplt. Opening Br. at 21 ("Anderson's attorney in 2013 and 2014, Douglas Otto, further confirmed that the attorney fees paid to him at issue in this case

8

by Anderson were for claims that arose from the business relationship between Anderson and [his research assistant]."); *id.* at 28 ("Dr. Anderson's attorney fees at issue in this case . . . were spent to investigate and reveal suspected security breaches and [intellectual property] theft."); *id.* at 30 ("Attorney Douglas Otto . . . stat[ed] that his fees arose as a result of the business relationship between Anderson and [his research assistant]."). Based on the lack of evidence supporting Petitioners' conclusory assertions, we see no error, let alone clear error, in the Tax Court's factual findings on this issue.

As to Petitioners' remaining arguments, we agree with the Tax Court's well-reasoned decision, and we affirm for substantially the same reasons stated in the Tax Court's "Memorandum Findings of Fact and Opinion" dated March 28, 2023.[3]

III. Conclusion

The judgment of the Tax Court is affirmed.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[3] We do not consider the California state-court pleading attached to Petitioners' reply brief because it was not before the Tax Court and is not part of the record on appeal. *See United States v. Kennedy,* 225 F.3d 1187, 1191 (10th Cir. 2000) ("This court will not consider material outside the record before the district court."); Fed. R. App. P. 10(a)(1) (stating that the record on appeal is comprised of "the original papers and exhibits filed in the district court" and any transcripts of proceedings and a certified copy of the district court docket entries); Fed. R. App. P. 13(a)(4)(A) (stating that the record on appeal from the Tax Court is governed by Fed. R. App. P 10).